# Margaret Bagley

### v.

# The Grand Lodge of Ancient Order of United Workmen of Illinois.

*Life Insurance—Mutual Benefit Association—Failure to Pay Assessments.*

1. Where a body is called upon to act, an opportunity must be given to act or decline to do so. A lodge can not be said to have made an assessment because its presiding officer has assumed it would do so, and directed its members to act as if it had done so.

2. In an action brought by the beneficiary named in a life insurance certificate, this court holds, in view of the evidence, that assured did not fail to pay any assessment made by the subordinate lodge of which he was a member; that his certificate was not at any time forfeited, and that the judgment against her can not stand.

[Opinion filed November 17, 1892.]

In error to the Superior Court of Cook County; the Hon. Theodore Brentano, Judge, presiding.

Mr. F. W. Becker, for plaintiff in error.

Mr. John P. Ahrens, for defendant in error.

Mr. Justice Waterman. This was an action of debt brought by appellant, who was the beneficiary named in a life insurance certificate issued by appellee to one John Bagley.

John Bagley was in his lifetime a member of Ætna Lodge, No. 159, a body subordinate to the Grand Lodge. One of the by-laws of the Grand Lodge provided that upon the death of any brother entitled to participate in the beneficiary fund, it should be the duty of the subordinate lodge of which he was a member to notify the Grand Recorder; the by-law then proceeds as follows: " who shall on the first

day of the following month notify each subordinate lodge in his jurisdiction, when the beneficiary fund on hand in each subordinate lodge  *  *  *  shall be immediately forwarded to the Grand Recorder, and a record thereof entered on the minutes. Each subordinate lodge shall then make an assessment of one dollar upon each member holding a certificate, provided such member has received such certificate, or is entitled to receive the same, prior to the date of the death on which the assessment is made. Written notice of assessment shall be made and sent by the Financier not later than the 8th day of the month in which the notice was issued by the Grand Recorder; and not later than the 28th day of said month in which said notice of assessment was given. Any member holding a certificate of the beneficiary fund having failed or neglected to pay said assessment into the beneficiary fund in his subordinate lodge, shall forfeit all his rights under said certificate."

The ninth article of the constitution of the Grand Lodge contained the following: "The certificate of each member who has not paid such assessment on or before the 28th of said month shall, by the fact of such non-payment, stand suspended, and no action on the part of the lodge or any officer thereof shall be required as essential to such suspension." John Bagley died March 31, 1885.

Upon the trial of this cause the defendant introduced from the minutes of Ætna Lodge 159, the following entry dated March 5, 1885: "Assessments Nos. 102 and 103 on deaths 458 and 466 was called March 1st." The recorder of Ætna Lodge testified: "I read from the Anchor and Shield on this night official notice of assessment for March 1, 1885, assessments Nos. 102 and 103 on deaths Nos. 458 and 456." The Anchor and Shield was an official publication of the order. The recorder also testified: "After reading it I entered it on our minute book" (as above).

"Q. Now state what the custom was of Ætna Lodge to make an assessment at that time, under the law as it stood, and how these assessments 102 and 103 were made?

A. The call was read from the official organ, and the

presiding officer would state that members would pay assessments so and so, and will take notice of this also; the financier would send out notices; that is the way it was done at that time. It was entered in the minutes.

Q. I will ask you if it ever was the custom of Ætna Lodge to take a formal vote to make an assessment?

A. Never.

Q. How did you come to state in this entry, assessment 103 instead of assessments 102 and 103; was that your custom where there was double assessment?

A. Yes, sir."

The defendant also read from the minute book for the meeting held March 12th, as follows: "Minutes of last meeting read and approved."

Neither of the assessments, so called, Nos. 102 and 103, were paid by John Bagley.

It is insisted, and the court below found, that John Bagley having failed to pay the so-called assessment No. 102, on or before the 28th of March, 1885, he, if duly notified thereof, by virtue of the constitution and by-laws of the Grand Lodge, forfeited all his rights under the beneficiary certificate issued to him.

The first question presented for our consideration is whether "assessment No. 102" was ever made by Ætna Lodge.

It would seem from matter contained in the Anchor and Shield, introduced in evidence, that it was the habit in the order to speak of the notice or order of the grand recorder to make an assessment, as the assessment. The notice in the official organ begins, "Grand Lodge Department, Official Notice of Assessments for March, 1885. Assessments Nos. 102 and 103;" but it is unmistakable that the grand recorder had authority only, after having received official notice of the death of a member, "to notify each subordinate lodge in his jurisdiction," and that it then became the duty of each subordinate lodge "to make an assessment."

Clearly the making of the assessment was left to each subordinate lodge. What did Ætna Lodge do?

The notice from the grand recorder was received March 2d or 3d. By the minutes and the testimony of the recorder of Ætna Lodge it appears that the recorder, at a meeting held March 5th, read from the Anchor and Shield a portion of the official notice by virtue of which it became the duty of Ætna Lodge to make an assessment or assessments; but it does not appear that the lodge did anything of the kind. The recorder entered the notice on the minute book and also made the minute, "Assessments Nos. 102 and 103 on deaths 458 and 456 was called March 1st." Upon this notice or call no action whatever was taken by the subordinate lodge.

The custom at that time, of the recorder to merely read from the official organ, and for the presiding officer to state "that members would pay assessments so and so," and the fact that it was not the custom of the lodge to take a formal vote upon an assessment, can not change the rule that where a body is called upon to act, an opportunity must be given to act or decline to do so. A lodge can not be said to have made an assessment because its presiding officer has assumed that it would do so, and directed its members to act as if it had done so. The assessment which the lodge was authorized to make would not be, as the presiding officer seems to have assumed, upon all members.

Members who had received the "M. W." degree after January 24th, were not liable to assessment on the notice to make assessment 102 on death 458, and those who had received the same degree after February 4th, were not liable to assessment on the notice to make assessment No. 103 on death 466.

The statement by the presiding officer, that members would pay assessments, etc., was not, if intended as an assessment, correct; certain members were exempt from the assessments which the lodge had been notified to make. It does not appear that the lodge could properly have made an assessment for deaths Nos. 458 and 466 upon all members; its duty was to inquire and determine upon whom an assessment should be made.

True it is, that the lodge might have, by by-laws, provided in what manner it should proceed in the making of assessments, and might perhaps have declared that the reading of the notice and the statement of its presiding officer should constitute the making of an assessment; but it does not appear to have had any such by-laws, and its custom, then existing, can not take the place of a definite regulation. John Bagley was not present at the meeting when, without calling upon the lodge to act, it was assumed that it had acted and made it obligatory on him to pay a certain sum by March 28th, under the penalty of losing his benefit certificate.

As is urged, the lodge might make an assessment in the way it saw fit; but *it* must make; it must act in some way. An assumption that it had acted or would act can not take the place of action; no action can not be made the equivalent of action. Nor, as is urged, is the want of action made action because the lodge was under a duty to act and to make the assessment. It was under a duty to collect and pay over money; if it had failed to do either, could the imperative duty have been taken as collection or payment ?

It is said that the minutes of the meeting of March 5th having been approved March 12th, thereby the lodge confirmed the assessments, even if they were not properly made before.

The approval or confirmation can not be broader than the minutes themselves; the minute is " Assessments Nos. 102 and 103 on deaths 458 and 466 was called March 1st."

This is not a statement that any assessment was made March 5th. It is seemingly a minute showing when the notice to make the assessments was issued, viz., March 1st.

It does not appear that John Bagley failed to pay any assessment made by the subordinate lodge of which he was a member. His certificate was not, therefore, forfeited on the 28th of March, 1885.

The judgment of the Superior Court is reversed and the cause remanded.

*Reversed and remanded.*